# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DEBRA S. DEUCALION,

    Plaintiff,

vs.                                    Civil No. 00-1549 LH WWD

LARRY G. MASSANARI, ACTING
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1. This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed April 25, 2001 **(Doc. 9)**.[1] The Commissioner denied Plaintiff's request for Supplemental Security Income. Plaintiff is currently age 36 and alleges a disability which commenced March 1, 1997 due to back, hip and knee problems, including arthritis and pain, as well as depression.

    2. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied the application, concluding that Plaintiff has severe impairments of obesity and back, hip and knee problems, and that Ms. Deucalion can perform light work unencumbered by nonexertional impairments. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, thus rendering the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

---

[1] The motion package was actually filed with the Court on July 6, 2001, although the motion was served on April 25, 2001.

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

4. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the finding that Ms. Deucalion can perform a full range of light work is not supported by the evidence, and is contrary to law; (2) the finding that Ms. Deucalion's mental impairment is not severe is not supported by substantial evidence and is contrary to law; (3) the ALJ's credibility determination is not supported by substantial evidence and is contrary to law; and (4) the ALJ erred when he did not discuss Plaintiff's receipt of general assistance benefits.

5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. § 1382c(a)(3)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. § 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).[2]

---

[2] At the first four levels of the evaluation, the claimant must show: (1) that she is not working; (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that she is unable to perform work done in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

6. At step five, the burden shifts to the Commissioner to show that the claimant has a residual functional capacity ("RFC") to do work in the national economy other than past relevant work. Thompson at 1487 (citations omitted). The Medical-Vocational Guidelines ("grids") are used at this step to determine whether disability exists. 20 C.F.R. Part 404, Subpt. P, App. 2. The grids reflect the existence of jobs in the national economy at various residual functional capacity ("RFC") levels by incorporating administrative notice of occupational publications and studies. 20 C.F.R. §§404.1566(d); 416.966(d). This aids the Commissioner in determining what specific job types in the national economy the claimant can perform. The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §2000(e)(2).

7. Ms. Deucalion testified that she could not work because she was unable to stand for very long and has pain "all the time" in her lower back and which spreads to her hips and legs. Tr. at 38 -39 . Plaintiff injured her shoulder in 1999, but she told the ALJ that the injury has improved much in terms of mobility since that time. Tr. at 53.

8. To obtain some relief for her back pain, she has her roommate apply deep-heating rubbing ointments on her back. She takes pain medication which she said "works," but doesn't to [sic] the whole job. . ." and which makes her nauseous and sleepy. Tr. at 40, 48. Ms. Deucalion has no medical insurance. She told the ALJ that she tried, but could not get coverage (through medicaid) because she has no dependents living with her. Tr. at 34.

9. Plaintiff claims there are days she stays in bed because she can hardly move. Tr. at 40. She can walk about half a block, and has to change positions frequently when sitting. Tr. at 45.

She stated that she can stand about 20 minutes, has trouble stooping and bending and can lift at most 10 pounds. Tr. at 46. Ms. Deucalion's roommate helps her with the shopping. Although she has a license, she does not drive because she has trouble seeing at night, and stated that she is too nervous to drive at other times, although she is physically able to do so. Tr. at 48-50. Plaintiff washes dishes and does the vacuuming while her roommate does the laundry because that is how they have split up the chores. Tr. at 49.

10. Ms. Deucalion sometimes watches television. She keeps up with sewing or mending as a hobby, and does not do as many of her other hobbies as she used to, such as bicycling. Tr. at 51-52. She spends considerable time reading and sometimes understands what she's reading, depending on the material. Plaintiff attends GED classes twice a week at night for two hours. Tr. at 57-58.

11. Ms. Deucalion does stretching exercises at home and has been advised by her doctors to take regular walks, but she said that she sometimes gets too depressed to care about following this advice. Tr. at 56. She takes a nap every day from 12 to 2 because she feels better after her afternoon nap than after waking up in the morning. Tr. at 63.

12. Plaintiff said she had attended counseling sessions because of "emotional problems" stemming from sexual abuse experienced as a child. Tr. at 41-42. At the hearing, the ALJ suggested that her depression was situational, as a result of marital difficulties and a custody struggle with her ex-spouse after protective services were called in and questioned Plaintiff's parenting skills. Tr. at 32, 36.

13. Ms. Deucalion stated that she is currently trying to get custody of her four year-old daughter. Her ex-husband has custody of that child, who is not his biological daughter, as well as

4

their two other daughters.  Plaintiff's two sons are in foster homes after being removed from Plaintiff's home in 1993 because of molestation by Plaintiff's boyfriends at different time.  The sons do not wish to live with her, and Plaintiff is hoping that they are adopted.  Tr. at 62, 268.

14. Plaintiff told the ALJ that even when her children were living with her, she was still thinking of suicide, and that she has had depression since 1995.  Tr. at 57-58.  She has never attempted suicide.  Tr at 59.  She told the ALJ that she "blacks out" to the point where she becomes completely forgetful, and at times has burned food because of this problem.  She has no friends and does not like being around a lot of people.  Tr. at 44.  Ms. Deucalion noticed some improvement after starting on anti-depressants, but she still does not like to go out.  She believes that she has self-esteem that is "all right."  Tr.at 60.

**First Alleged Error**

15. Plaintiff contends that the ALJ's finding that Ms. Deucalion can perform a full range of light work is not supported by the evidence, and is contrary to law.   She has past relevant work as a cashier and stocker which was performed at the medium, unskilled level.   At the time of hearing, she was working on her GED.  Tr. at 34, 59.  She quit the stock job because she had problems working with a 16 year-old who was not having to work shifts that Plaintiff had to work.  Tr. at 59.

16. The ALJ found that Ms. Deucalion could not return to past relevant work as a fast food cashier or stocker at a medium level of work.  However, the ALJ determined that Plaintiff could perform at least light work.  Tr. at 18.  I find this determination to be supported by the evidence.

17. Plaintiff argues that the ALJ made his determination regarding RFC on an absence of

5

evidence. She also characterizes Defendant's position as it incorrectly requiring two separate RFC findings, and placing the burden of establishing an RFC at step four when Plaintiff still maintains the burden of proving that she is disabled. Flint v. Sullivan, 951 F.2d 264, 267 (10th Cir. 1991). Contrary to Plaintiff's characterization of the analysis, I cannot find where Defendant suggests that Plaintiff's RFC is determined twice. On page 3 in the response, Defendant states that under the regulations, claimant's have only *one* RFC, which is the most a claimant can do "despite [her] limitations." 20 C.F.R. § 416.945; SSR 96-8p.

18. Although a claimant's RFC is factored into step four as well step five of the sequential analysis, Winfrey v. Chater, 92 F.3d 1017, 1023 n.4 (10th Cir. 1996), the analysis is still made based on proof of disability provided by the claimant.[3]

19. I find that the ALJ's RFC finding was not in error and was not contrary to law. The ALJ examined the medical evidence relating to Plaintiff's back, knee, and shoulder impairments, as well as her depression. Although Plaintiff was diagnosed with osteoarthritis and chronic low back pain, Tr. at 193, 223, 246, the ALJ noted that the medical treatment notes did not indicate impairments that resulted in functional limitations, for either the back or knee impairments. An examining physician found slight tenderness on Plaintiff's left knee, and none in the left. Tr. at 127. Plaintiff used topical remedies such as Ben-Gay, and she was advised to lose weight and continue ibuprofen as needed.[4] X-ray results showed unremarkable alignment. Tr. at 155.

20. Plaintiff injured her shoulder in January 1999 when she was shoved against a

---

[3] Plaintiff does not allege that the ALJ insufficiently developed the record, nor do I find that to be the case here.

[4] At the time of the hearing, Plaintiff had weighed 243 pounds after having lost some weight. Tr. at 32.

6

gambling machine at Isleta Gambling Casino. Medical notes from January and March indicate that the range of motion in the shoulder had improved with therapy. A neurological consult was recommended because Plaintiff was complaining of numbness in her arm. X-ray results were negative except for question of a "calcific body" in the shoulder. Tr. at 239. The ALJ noted that after a progress note dated April 12, 1999, which indicated that Plaintiff had failed to make a follow-up appointment, there are no other medical records relating to this impairment.

21. The RFC completed by a consulting physician indicated that Plaintiff had the capacity for at least light work. Tr. at 160. The ALJ was clearly aware that the conclusions of a non-examining, non-treating physician is not entitled to controlling weight. Tr. at 18. However, given Plaintiff's medical history and other evidence in the record, the ALJ's decision regarding RFC was not contrary to law and was supported by the evidence in the record.

**Second Alleged Error**

22. Plaintiff alleges that the finding that Ms. Deucalion's mental impairment is not severe is not supported by substantial evidence and is contrary to law. The ALJ concluded that Ms. Deucalion did not have a "severe" impairment. Specifically, he found that Plaintiff's depression did not significantly affect her ability to understand and remember simple instructions, use judgment, or respond appropriately to supervisors, co-workers and usual work situations. Tr. at 16.

23. If an impairment is so slight that ability to perform gainful activity is not seriously affected, the sequential analysis may conclude at step two. Bowen v. Yuckert, 482 U.S. 137,152 (1987). In this case, Plaintiff stated that she had crying spells and problems with memory. However, a claimant must show more than the mere presence of a condition or ailment. Id. at

7

153.

24. The ALJ carefully went through the evidence in the record pertaining to Plaintiff's mental impairment. I find that the ALJ's findings are consistent with this evidence.

25. Two Psychiatric Review Technique Forms ("PRT") were completed, one dated October 1998 and one dated February 1999 by non-treating, non-examining physicians. Tr. at 146, 169. The findings indicated that Ms. Deucalion had no limitations that would affect her ability to work in any of the categories presented.[5] Tr. at 153, 170.

26. The findings in the PRT's were consistent with other medical evidence. Plaintiff points to the evaluation done by Moss Aubrey, Ph.D. in March 1998 as a basis for her argument that her mental impairment (depression) should be considered a severe impairment. Tr. at 248-58.

27. I find that Dr. Aubrey's report is not contrary to the ALJ's finding regarding Ms. Deucalion's depression. Dr. Aubrey stated that Plaintiff "denied any significant symptoms of depression." Tr. at 254. Although he opined that Plaintiff would have difficulty with tasks that involve reading or independent thinking, he also opined that there was some question regarding the candor of her responses. Tr. at 254, 256 (elevated "faking good" index).

28. Dr. Aubrey found no evidence of psychotic disorder, but did find evidence suggestive of a mild form of bi-polar disorder. I note, as Defendant points out, that Dr. Aubrey's guarded prognosis related specifically to the purposes of his evaluation, which was to help determine whether Plaintiff could care for her children, not whether she could perform work.

29. Notes and reports of Dr. Karen Phillips, a treating physician, also are consistent with

---

[5] Plaintiff's deficiencies were found to occur either "seldom" or "never" in categories of activities of daily living; social functioning; concentration, persistence or pace; deterioration or decompensation at work or in work-like settings.

8

the ALJ's findings that Plaintiff's mental impairment is not severe. Dr. Phillips diagnosed Plaintiff with situational depression in May 1998. Tr. at 136. After adding Zoloft to Trazodone as a medication regime because the Trazodone was not helping her sleep disturbances, Dr. Phillips noted in March 1999 that Ms. Deucalion stated she was doing well and feeling "much better" then when using just Trazodone. Tr. at 188, 207. An impairment that can reasonably be remedied or controlled by treatment cannot support a finding of disability. Pacheco v. Sullivan, 931 F.2d 695, 698 (10th Cir. 1991).

30. Plaintiff also saw Dr. Karp for a psychiatric consultation in February 1999. Plaintiff denied any current psychiatric problem, and reported to Dr. Karp that she didn't have any problems with sadness or anxiety, although she stated that her doctor thought she was depressed. Tr. at 156. Dr. Karp opined that Plaintiff showed no evidence of memory problems, thought disorder, or delusion. He also found no "significant impairment for recent or past memory, or for recall on superficial testing." Tr. at 158.

31. The non-examining, non-treating physicians who completed PRT's found that Plaintiff's depression was situational. Plaintiff's treating physician, Dr. Phillips found likewise. Tr. at 137 (assessment of "[s]ituational depression with accompanying insomnia"). Dr. Karp's clinical impression was that Plaintiff had "[s]ituational depression, currently resolved". Tr. at 158.

32. The medical evidence supports the ALJ's conclusion that Plaintiff's mental impairment was not severe in that it did not affect her ability to work, which is a step two finding. Accordingly, I find that the ALJ's decision is based on substantial evidence from the record and is not contrary to law.

9

**Third Alleged Error**

33. Plaintiff contends that the ALJ's credibility determination is not supported by substantial evidence and is contrary to law. Specifically, Plaintiff contends that the ALJ linked the veracity of Ms. Deucalion's complaint to the existence of an impairment that can be expected to produce the level of pain of which she complained.

34. Plaintiff is correct that she is not required to present objective medical evidence to corroborate the degree of pain she alleged. See Huston v. Bowen, 838 F.2d 1125 (10th Cir. 1988). However, the absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain. Luna v. Bowen, 834 F.2d 161, 165 (10th Cir. 1987).

35. The medical evidence in the record which was considered by the ALJ in this case, Tr. at 18, indicates that the ALJ was not impermissibly relying on this evidence to explain the degree of pain alleged by Ms. Deucalion. The ALJ did, however, note the inconsistency between the medical findings and the symptoms alleged by Plaintiff. See Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988) (a determination that plaintiff was not credible because his testimony conflicted with the medical records is a recognized basis for discounting that testimony).

36. The ALJ was allowed to consider other factors, such as her daily activities (at the time, Plaintiff's five children were apparently living with her before they were removed by a state agency). See Tr. at 18.[6] He considered the medications Plaintiff used and what relief they afforded; the lack of restrictions placed on her by her treating physicians as well as Plaintiff's

---

[6] It seems that in February 1999, Plaintiff was still caring for her children, Tr. at 15, 18, 156, although by the time of the hearing she told the ALJ that they were no longer living with her.

efforts to keep medical appointments and seek medical treatment for her alleged impairments.

38. Because subjective complaints must be accompanied by medical evidence "and may be disregarded if unsupported by clinical findings," Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987), the ALJ's decision regarding credibility was not contrary to law. It was also supported by substantial evidence from the record.

**Fourth Alleged Error**

38. Plaintiff contends that the ALJ erred when he did not discuss Plaintiff's receipt of general assistance benefits. Ms. Deucalion stated that she receives $231 a month from general assistance (N.M.S.A. § 27-2-7) as well as food stamps, based on medical problems. Tr. at 34, 57.

39. Determinations of disability made by other government agencies are entitled to consideration by the Commissioner. Mandrell v. Weinberger, 511 F.2d 1102, 1103 (10th Cir. 1975) (cited in Gathright v. Shalala, 872 F.Supp. 893, 899 (D.N.M. 1998)). However, the amount of weight to be attached to another government agency's disability determination is left to the Commissioner to determine. Id.

40. The fact that Plaintiff had been found eligible for general assistance is not binding on the Commissioner. 20 C.F.R. § 416.904 (pointing out that determinations are based on social security law). While Plaintiff may be considered disabled for purposes of general assistance benefits, those rules are not applicable for a determination of disability under social security regulations. Cmp.,e.g., Weaver v. New Mexico Human Serv. Dept., 123 N.M. 705, 706 (1997) (general assistance program provides financial assistance : 1) to permanently disabled adults with no minor dependents who are not eligible for [Social Security Income] because their disability is not severe enough;. . ."). Thus, any error in the ALJ's omission of this factor in the analysis is

"*de minimis*" and does not require remand on this basis.

41. In sum, I find in favor of Defendant on all of Plaintiff's alleged errors.

## Recommendation

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing **(Doc. 9)** be DENIED and this cause of action DISMISSED WITH PREJUDICE. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE